INTERNATIONAL HARVESTER CREDIT CORPORATION v VOS

Docket Nos. 78-3486, 78-3487. Submitted June 11, 1979, at Grand
Rapids.—Decided January 22, 1980. Leave to appeal denied,
408 Mich 949.

On February 25, 1975, an International Harvester dealer in
Ionia, Michigan, sold a used tractor to Terry Blaser on an
installment contract. The sale contract listed Blaser's residence
as Ionia County. At the time of the purchase, Blaser informed
the dealer that he was going to move to Barry County. On
February 28, 1975, Blaser took delivery of the tractor at his
Ionia County address. A financing statement, which was exe-
cuted with the contract, was filed in Barry County on February
28, 1975. The contract and security agreement were immedi-
ately assigned to International Harvester Credit Corporation
(IHCC). Blaser moved to Barry County on March 15, 1975, and
lived there until the end of June, 1975. He then moved back to
Ionia County for a few months, then to Kent County for three
weeks and, finally, to Muskegon County where he sold the
tractor to Jay and Dale Vos. Blaser informed the Vos brothers
that he was the owner of the tractor, but did not tell them it
was subject to a lien. The First Michigan Bank & Trust
Company accepted the Vos's application for a loan on the
tractor and informed Dale Vos that no prior liens had been
discovered. Relying upon the bank's title search, the Vos broth-
ers paid Blaser $12,000 for the tractor, financing $7,000
through the bank. On May 19, 1977, International Harvester
Credit Corporation commenced an action against Jay and Dale
Vos seeking possession of the tractor on the grounds that the
plaintiff had a prior, perfected security interest in the tractor.
The defendants filed a third-party complaint against Blaser and
a cross-complaint against First Michigan Bank & Trust Com-
pany, who had intervened as a defendant in the action. The
Ottawa Circuit Court, James E. Townsend, J., found that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 69 Am Jur 2d, Secured Transactions §§ 360, 415, 471.
Construction and effect of UCC Art 9, dealing with secured transac-
tions, sales accounts, contract rights, and chattel paper. 30
ALR3d 9.
[2-5] 69 Am Jur 2d, Secured Transactions §§ 367, 410, 414.

filing of a financing statement in Barry County and the subsequent residence of Blaser in that county constituted a proper perfection of the security interest. As a result, the trial court entered judgment awarding possession of the tractor to the plaintiff. The Vos brothers and First Michigan Bank & Trust Company both appeal. The appeals have been consolidated for consideration. On appeal the following issue is raised: When is a debtor's residence determined for purposes of perfecting a security interest in farm equipment under the section of the Uniform Commercial Code which requires filing in the office of the register of deeds in the county of the debtor's residence? *Held:*

For purposes of perfecting a purchase money security interest in farm equipment, which requires local filing under Michigan law, the debtor's county of residence should be determined as of the moment the debtor's interest in the collateral attaches. The trial court erred when it found that the plaintiff's misfiling in Barry County was "cured" when the factors necessary for perfection subsequently coalesced in Barry County. The filing in Barry County was improper and the plaintiff's security interest was not perfected.

Reversed.

D. F. Walsh, P.J., dissented. He would hold that when the debtor established his residence in Barry County where the financing statement had already been filed, the security interest was perfected. The filing statute does not require that the financial statement be filed in the county in which the debtor resided at the time the security interest attached to the collateral.

OPINION OF THE COURT

1. SECURED TRANSACTIONS — SECURITY INTERESTS — FARM EQUIPMENT — PERFECTION — UNIFORM COMMERCIAL CODE — STATUTES.

Each step necessary for the perfecting of a lien under the Uniform Commercial Code must be properly undertaken, although the sequence of the steps is immaterial; if a creditor seeking to perfect a security interest in farm equipment files a financing statement in the wrong county, then that filing is improper and, regardless of its sequence in relation to the other requisites, perfection is unattainable (MCL 440.9401[1][a]; MSA 19.9401[1][a]).

2. SECURED TRANSACTIONS — FARM EQUIPMENT — UNIFORM COMMERCIAL CODE.

Michigan's Uniform Commercial Code does not impose an obliga-

tion on prospective purchasers of farm equipment to search the records of every county in which the seller of the equipment resided during the life of the collateral.

3. SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE — PERFECTION — PURCHASE MONEY SECURITY INTEREST — FARM EQUIPMENT.

The Uniform Commercial Code's purpose of simplifying, clarifying and modernizing the law requires that, in order to perfect a purchase money security interest in farm equipment, the county of the debtor's residence is the proper place for filing the financing statement and the debtor's residence should be determined at a specific moment in time.

4. SECURED TRANSACTIONS — PERFECTION — PURCHASE MONEY SECURITY INTEREST — FARM EQUIPMENT — DEBTOR'S COUNTY OF RESIDENCE — STATUTES.

A debtor's county of residence, for purposes of perfecting a purchase money security interest in farm equipment which requires local filing under Michigan law, should be determined as of the moment the debtor's interest in the collateral attaches (MCL 440.9401[1][a]; MSA 19.9401[1][a]).

DISSENT BY D. F. WALSH, P.J.

5. SECURED TRANSACTIONS — PERFECTION — FARM EQUIPMENT — FILING — DEBTOR'S COUNTY OF RESIDENCE — STATUTES.

*The statute governing where a creditor should file a financing statement in order to perfect a security interest in farm equipment provides only that the proper place to file in order to perfect the security interest is the county of the debtor's residence; it does not require that the financing statement be filed in the county in which the debtor resides at the time the security interest attaches nor does it require that the debtor's residence must be determined at any specific time (MCL 400.9401[1]; MSA 19.9401[1]).*

*Wheeler, Upham, Bryant & Uhl* (by *William R. DeVries),* for plaintiff.

*Cunningham & Associates* (by *Andrew J. Mulder),* for First Michigan Bank and Trust Co.

Before: D. F. WALSH, P.J., and M. J. KELLY and
E. F. OPPLIGER,* JJ.

M. J. KELLY, J. The present case requires that
we address an issue of first impression under the
Uniform Commercial Code, MCL 440.1101 *et seq.;*
MSA 19.1101 *et seq.:* when is a debtor's residence
determined for purposes of perfecting a security
interest in farm equipment under MCL
440.9401(1)(a); MSA 19.9401(1)(a), which requires
filing in the office of the register of deeds in the
county of the debtor's residence?

FACTS

On February 25, 1975, Harder & Sons, Inc., an
International Harvester dealership in Ionia, Michi-
gan, sold a used International Harvester 1066
diesel tractor to one Terry Blaser on an install-
ment contract. The contract also included three
other pieces of farm equipment, but since they are
unimportant to the controversy we treat the trans-
action as though it pertained only to the diesel
tractor. The contract listed Blaser's address as
Ionia County; however, as found by the trial court,
at the time of purchase Blaser informed Harder
that he was going to rent a farm or work and live
on a farm in Barry County. On February 28, 1975,
Blaser took delivery of the tractor at the Ionia
County address. A financing statement, which was
executed with the contract, was filed in Barry
County on February 28, 1975. The contract and
security agreement were immediately assigned to
plaintiff, International Harvester Credit Corpora-
tion (IHCC).

Blaser subsequently moved to the Aukerman

* Circuit judge, sitting on the Court of Appeals by assignment.

farm in Barry County on the 15th of March, 1975, and lived there continuously until the end of June, 1975. He moved back to Ionia County for a few months, then to Kent County for three weeks, and, finally, to Muskegon County where he sold the tractor to defendants Jay and Dale Vos. At the time, he informed the Vos brothers that he was the owner of the tractor, but did not tell them that the tractor was subject to a lien. In order to obtain financing for the purchase of the tractor, the Vos brothers went to the codefendant, First Michigan Bank & Trust Company. In making a loan application, they asked the bank official to check for liens on the tractor. Three days later the banker informed Dale Vos that the application was accepted and that no prior liens had been discovered. Relying on the accuracy of the bank's title search, the Vos brothers paid Blaser $12,000 for the tractor, financing $7,000 through the bank.

On May 19, 1977, plaintiff filed this suit against the Vos brothers seeking possession of the tractor on the grounds that plaintiff had a prior, perfected security interest. The Vos brothers first learned of plaintiff's interest in the tractor when they were served with a complaint and summons initiating this action. Following a bench trial, the lower court found that the filing of a financing statement in Barry County and the subsequent residence of Blaser in that county constituted a proper perfection of the security interest. As a result, the trial court entered judgment awarding possession of the tractor to plaintiff.

In holding for the plaintiff, the trial court acknowledged that, if the defendants had acquired the tractor before Blaser moved to Barry County, they would be protected as intervening lien creditors against plaintiff's unperfected security inter-

est. MCL 440.9301(b); MSA 19.9301(b). However, the court held that, when Blaser became a resident of Barry County, there was a "unity" of the requisites of perfection, *i.e.*, a security agreement, attachment and filing in the county of the debtor's residence, which "cured" the misfiled finance statement and perfected plaintiff's security interest. In reaching this conclusion, the court reasoned that, because the UCC recognizes both early and late filing, MCL 440.9402(1); MSA 19.9402(1), MCL 440.9301(1)(b); MSA 19.9301(1)(b), the sequence of steps in obtaining perfection is not determinative, so that perfection would occur whenever and wherever these requisites were met. Furthermore, the court viewed this position as consistent with the defendant's perceived duty (as a subsequent purchaser and secured party) to search the records in every prior county of the debtor's residence during the life of the collateral. *In re Simpson,* 4 UCC Rptr 250, 255 (WD Mich, 1966), *In re Gac,* 11 UCC Rptr 412 (WD Mich, 1972). Pursuant to this reasoning, the court found the defendants to be on constructive notice of plaintiff's perfected security interest in Barry County as of March 15, 1975, and held that plaintiff's security interest prevailed over subsequent claims.

### Discussion

Although it is the purpose of the UCC to simplify and clarify the law regarding the creation and regulation of security interests, certain relatively straightforward questions of commercial law remain unanswered. This case presents one such question: when is a debtor's residence determined for purposes of perfecting a security interest in farm equipment by local filing? The briefs of the parties, the case law of other jurisdictions, and the

opinion of the lower court each supply conflicting answers to the posited question. The plaintiff adopts the position expressed in the lower court opinion and argues that residency is a fluid concept; that is, it is determined when the existence of a security interest, the debtor's attachment, and filing in the county of the debtor's residence coalesce in a particular location. On the other hand, the defendants argue that the debtor's residence should be determined at a specific moment: that is, when the debtor's interest in the collateral attaches. Therefore, our disposition of the issue requires a two-tier analysis: first, to ascertain the nature of the determination of residency, and second, if that determination is made at a specific time, whether it be the moment of attachment or filing.

We hold that the trial court erred when it found that plaintiff's misfiling in Barry County was "cured" when the factors necessary for perfection subsequently coalesced in Barry County. We find the lower court erred in several respects. First, although the sequence of steps necessary for perfecting the lien is immaterial, each step, nevertheless, must be properly undertaken. If the secured party files a financing statement in the wrong county, then that filing is improper and, regardless of its sequence in relation to the other requisites, perfection is unattainable. Secondly, we overrule the lower court's conclusion that Michigan law imposes an obligation on prospective purchasers to search the records of every county in which the debtor resided during the life of the collateral. In our opinion, this conclusion imposes an onerous burden on the subsequent purchaser which is unwarranted by our case law. Here, Blaser resided in Ionia County and subsequently relocated to Barry

County, then Ionia, then Kent, and finally Musk-
egon County between February 25, 1975, and No-
vember 1, 1975. Under the trial court's ruling,
defendant would have had to check the records of
each county since a financing statement represent-
ing a purchase money security interest filed in any
one of them would have resulted in perfection
when Blaser ultimately assumed residency there.

Both of the cases relied upon by the lower court
in this respect are distinguishable and discuss the
point in dicta. In the case of *In re Simpson, supra,*
the risk to the prospective purchaser, which war-
ranted an expansive search of county records, was
that of a competing security interest by a subse-
quent subordinate creditor, not the original pur-
chase money lender. In the latter case, there is no
necessity for an expansive search because the
purchase money security interest would have
arisen at the outset of the debtor's possession of
the collateral. Similarly, in *In re Gac, supra,* the
issue concerned the secured party's obligation to
file a new financing statement when the debtor
changed her name. Thus, the reference to the
purchaser's duty to perform an expansive search
was unnecessary to the disposition of that case,
which held that the UCC imposes no duty on a
secured party to refile in the event the debtor
changes her name. The underlying purposes of the
UCC are "to simplify, clarify and modernize the
law governing commercial transactions". MCL
440.1102(2)(a); MSA 19.1102(2)(a). By upholding
plaintiff's priority of lien under a "unity of fac-
tors" analysis, the trial court holding perpetuates
and encourages a business practice which need-
lessly complicates, confuses, and impedes the law
governing commercial transactions. To condition
the perfection of a security interest upon the

debtor's eventual residence in the county of filing results not in a floating lien, as contemplated by the UCC, but in a lien " 'drifting' in aimless and hazardous disregard of the rights of others necessarily navigating the same lanes of commerce". *In re Pelletier,* 5 UCC Rptr 327, 335 (D Maine, 1968). We decline to adopt the "unity of factors" analysis. We hold, on the contrary, that the code's purpose of simplifying, clarifying and modernizing the law requires that, in the case of a purchase money security interest in farm equipment, the county of the debtor's residence is the proper place for filing the financing statement, and should be determined at a specific moment in time. We now direct our attention to defining the appropriate point for that determination. Two logical points at which to fix the debtor's residence under MCL 440.9401; MSA 19.9401, suggest themselves: (1) the date of the attachment of the security interest, and (2) the date of the filing of the financing statement. In this inquiry, the case law of other jurisdictions provides some guidance.

The majority of the cases which have addressed this issue have held that the moment when the security interest attaches is the time that the debtor's residence should be ascertained for purposes of perfecting a security interest in the collateral. The case which most persuasively expresses this view is *In re Pelletier, supra.* In *Pelletier,* the debtor lived in Van Buren, Maine, all of his life. On July 3, 1966, he moved to the town of Freedom, where he lived for one week and then to Waterville, Maine. On July 28, 1966, he executed a security agreement on a mobile home. The mobile home was then delivered to a site in Benton, Maine. The security agreement gave the debtor's address as Van Buren, Maine and, pursuant to

Maine's local filing system,[1] the financing statement was filed there on August 10, 1966. When the debtor subsequently went bankrupt, the trustee in bankruptcy disputed the priority of the security interest in the mobile home on the grounds that the financing statement had been misfiled.

In assessing the trustee's challenge, the bankruptcy referee held that "the aims and purposes of the Code notice filing system will best be served by requiring that the financing statement be filed with the clerk of the municipality in which the debtor has his permanent residence as of the day the security interest attaches". *Id.,* at 332. In reaching this conclusion, the referee reasoned that:

"The purpose of notice filing is not to notify the world of the debtor's place of residence at the time of filing, but to notify it of the existence of a security interest in collateral which arose while the debtor resided in the place where the filing is made.

"* * * the filing of the notice should bear some discernible, logical relationship to the occurrence of which it is intended as notice." *Id.,* at 335.

The referee held that the secured party's filing in Van Buren, Maine, was unperfected, that the financing statement should have been filed in Ben-

---

[1] Maine's Uniform Commercial Code, in effect at the time *Pelletier, supra,* was decided, provided that when collateral consisted of consumer goods a financing statement was to be filed "(b) * * * in the office of the clerk of the municipality in which the debtor resides, or if the debtor (i) is not a resident of this State, or (ii) resides in an unorganized place, then in the office of the Secretary of State. Me Rev Stat Ann, tit 9, 3401(1). Under the analogous section of the Michigan Uniform Commercial Code a financing statement covering such collateral is to be filed in the office of the register of deeds in the county of the debtor's residence. MCL 440.9401(1)(a); MSA 19.9401(1)(a). The differences in these systems are immaterial to this analysis.

ton, Maine, where attachment occurred, and accordingly, rendered judgment for the trustee.

In holding that, for purposes of local filing, the determination of the debtor's residence should be made at the moment of attachment, the referee marshalled the following arguments. In the first place, this date was deemed preferable to determining the debtor's residence as of the date of filing the financing statement because "attachment * * * will ordinarily occur on the occasion of the final contact or communication between the parties * * * thereby affording a final opportunity for careful verification of the debtor's residence". *Id.,* at 332. Secondly, selection of the place of filing on the basis of the debtor's residence when the security interest attaches narrows the expanse of time within which the debtor's residence must be verified and provides a subsequent purchaser with helpful extrinsic evidence as to where the filing should have been made. *Id.,* at 334-335. Finally, the opinion noted that decisions as to the nature of the goods and collateral, MCL 440.9105(1)(f); MSA 19.9105(1)(f), MCL 440.9109; MSA 19.9109, must be made for purposes of determining the necessity for and selection of the place of filing, "it seems both consistent and reasonably convenient, and therefore desirable, to require that the decision as to the debtor's residence be made in like fashion". *Id.,* at 336.

The *Pelletier* holding was subsequently reaffirmed in another opinion by the same referee. In *In re O'Donnell,* 7 UCC Rptr 888 (D Maine, 1970), the security agreement covering a mobile home was executed by the parties when the debtor resided in East Millinocket, Maine, and intended to remain there following the purchase of the home from the secured party. After the sales contract

and security agreement were executed, the debtor moved, and the mobile home was delivered to Medway, Maine, upon her instructions. After the relocation to Medway, the secured party filed the financing statement covering the mobile home in East Millinocket. The referee held that, in accordance with the *Pelletier* case, the proper place to file is to be determined when the security interest attaches and, because the debtor resided in East Millinocket, Maine, at the time of attachment, the financing statement was properly filed there.

Similarly, in *In re Knapp,* 23 UCC Rptr 1354 (CA 2, 1978), the issue concerned where a financing statement should be filed when the debtor changes his residence between the time the security interest attaches and the time the financing statement is filed. In that case, the debtors purchased a trailer and listed their address on the security agreement as Herkimer County, New York, even though they were actually living in Fulton County. They were planning to move to Herkimer County when the trailer was delivered to its site there. They informed the secured party (seller) of the fact that they intended to move to Herkimer County. The trailer was delivered to its intended site in Herkimer County and the debtors moved in following delivery. Subsequently, the secured seller filed the financing statement in Fulton County. When the debtors went bankrupt, the trustee challenged the validity of the seller's claim to perfection. The United States District Court held for the secured seller on the grounds that the place of actual residence at the time the security interest attached was controlling. The Second Circuit Court of Appeals affirmed, stating:

"* * * we cannot accept the trustee's argument that the county of the debtor's residence at the time of the

filing of the financing statement should control. The choice of the time at which the security interest attaches to determine the place of filing is grounded in solid policy considerations. Credit checks of the debtor are routinely made then, as was the case here, and it is a logical and customary time for the verification of important facts, such as residence. We are as disinclined as other courts have been to tamper with such commercially reasonable rules. *In re O'Donnell, supra; In re Kane,* 1 UCC Rep Serv 582 (ED Pa 1962). But see *Schoel v. Oak Cliff Savings and Loan Association,* 21 UCC Rep Serv 325 (ND Ala 1977)." 23 UCC Rep 1357.

In our opinion, the policy considerations present in the *Knapp, O'Donnell* and *Pelletier* holdings apply with equal force to any collateral which requires local filing for perfection. Furthermore, because the rule of *Pelletier* is premised on the existence of a "discernible, logical relationship" between the place of filing and the creation of the security interest, we find that it best serves the UCC's purpose of simplifying, clarifying and modernizing commercial law. The desirability of such a rule is evident where, as here, the collateral is farm equipment which requires local filing for perfection of a security interest. Blaser resided in Ionia County when his interest in the tractor attached. Since plaintiff had a purchase money security interest, it stands to reason that subsequent purchasers would logically expect that security interest to arise, and be perfected, in the county of the debtor's residence at the time he acquired the tractor. To hold, as did the trial court, that a previously misfiled financing statement may be subsequently "cured" frustrates this logical expectation and introduces uncertainty into our commercial law. "Courts ought not adopt rules of filing which fail to advance, if they do not actually obstruct, the sole reason for requiring

filing—the giving of notice to those not privy to the security transaction." *Pelletier, surpa,* at 335, n 7.

We find that a reasonable measure of protection for the right of third parties necessitates that the rules governing the place of notice filing describe some logical course between the transaction and the filed notification of it. Therefore, we hold that, for purposes of perfecting a purchase money security interest in farm equipment which requires local filing under Michigan Law, the debtor's county of residence should be determined as of the moment the debtor's interest in the collateral attaches.

Reversed.


E. F. OPPLIGER, J., concurred.


D. F. WALSH, P.J., *(dissenting).* I must dissent. I concur in the trial court's conclusion that when the debtor establishes his residence in the county in which the financing statement is filed, the security interest is perfected.

The relevant statute[1] provides only that the "proper place to file in order to perfect a security interest * * * when the collateral is equipment used in farming operations * * * [is] the county of the debtor's residence". When Blaser moved to Barry County, the county in which the financing statement was filed was also the county of the debtor's residence. The statute requires nothing more for the perfection of the lien.

The statute does not require that the financing statement be filed in the county in which the debtor resided *at the time the security interest attached to the collateral.* Presumably if the Legis-

---

[1] MCL 440.9401(1); MSA 19.9401(1).

lature had intended such a requirement, it would have so provided.

To engraft such a requirement decisionally is permissible only if a strong discernible policy underlying the enactment of the Uniform Commercial Code were otherwise unattainable. I do not perceive that to be the situation here. The majority, however, citing *In re Pelletier,* 5 UCC Rptr 327, 335 (D Maine, 1968), concludes that the statute must be thus interpreted in order to insure commercial certainty in this type of transaction. I quote from the majority opinion:

> "Since plaintiff has a purchase money security interest, it stands to reason that subsequent purchasers would logically expect that security interest to arise, and be perfected, in the county of the debtor's residence at the time he acquired the tractor. To hold, as did the trial court, that a previously misfiled financing statement may be subsequently 'cured' frustrates this logical expectation and introduces uncertainty into our commercial law. 'Courts ought not adopt rules of filing which fail to advance, if they do not actually obstruct, the sole reason for requiring filing—the giving of notice to those not privy to the security transaction.' *Pelletier, surpa,* at 335, n 7."

I fail to understand how the majority's interpretation of the statute promotes commercial certainty. As the trial court correctly pointed out, since a debtor could have encumbered the collateral in *any* county in which he may have had his residence, a prospective purchaser or lender, in order to be safe, must search the records in *every* county in which the debtor lived during the time he owned the collateral.[2] This is true whether the

---

[2] With respect to this point the majority opinion states: "Secondly, we overrule the lower court's conclusion that Michigan law imposes an obligation on prospective purchasers to search the records of every county in which the debtor resided during the life of the collateral."

statute is interpreted as the majority interprets it or as the trial court did.

The "sole reason for requiring filing [is] the giving of notice to those not privy to the security transaction". *Pelletier, supra,* at 335, n 7. Normally, one "not privy" to a prior security transaction has no knowledge of it or of the date on which the security interest may have attached.[3] Requiring filing in the county in which a debtor resided on the date a security interest attached pursuant to a security transaction of which a subsequent purchaser or lender has no knowledge would not seem to assist the subsequent purchaser or lender or promote commercial certainty.

In this case, acting upon the information it had received, plaintiff filed the financing statement in Barry County in the belief that filing in Barry County gave the best prospect of notice of the prior lien to a subsequent purchaser or lender. In my judgment that belief was well founded since Barry County was the county in which Blaser was going to live and carry on the farming operation for which he had purchased the tractor.

At the time of filing, plaintiff's security interest was not perfected since Blaser had not yet moved to Barry County. When Blaser became a resident of Barry County, however, all of the statutory requirements for the perfection of the lien were fulfilled.

In my judgment neither commercial certainty

---

I find no conclusion in the trial court opinion that Michigan law imposes any obligation on prospective purchasers with respect to searching records, but rather an observation by the trial court that a prospective purchaser, *to be safe,* must search the records of every county in which the debtor had lived.

[3] Obviously if a subsequent purchaser or lender did have knowledge of a prior security transaction, no record search would be necessary.

nor any other desideratum of the Uniform Commercial Code requires that the debtor's county of residence must be determined at any specific time. All that is required is that the financing statement must be filed in the county of the debtor's residence. When that is accomplished, the security interest is perfected.

I would affirm.